Ladies and gentlemen, please rise. This court is now in session. You may be seated, and the clerk will call the next case. 321-0573, Charles Bellamy and a charge of Charles Bellamy theft, appellant by William Anderson IV v. Robin E. Davis, counterfeiter of Max Towney, appellate by Jeremy Carlin. Mr. Anderson, you may proceed. Thank you very much, your Honorable Justices. It's a real privilege to be in front of you here today and recognize Mr. Carlin, my esteemed colleague. And I believe my client, Kathy Bellamy, and her daughter are here also today. And I appreciate a chance to talk to you a little bit about this case. I won't go over every item all the way through, but I think one of the items that really wasn't briefed maybe as well as I would have liked to is on the standard to be used in review. Obviously, under the issues of whether or not this property was dilapidated, uninhabitable, unusable and unfit for human habitation is a manifest weight of the evidence argument. But another thing in my review and preparation of the oral arguments today that has bothered me is the 1988 Wagner decision, which I believe was this third district appellate court, but obviously probably a different set of justices at that time, that basically changes, in my view, the plain meaning of the statute from a person must apply for the sale in error not from the date that the tax deed is issued, before the date the tax deed is issued, as the statute states, but rather at the earliest opportunity that a tax deed could be applied for. And by changing that definition in the statute, it's my opinion you take the one-year window that a tax buyer has to buy this property and apply for a deed and to get the deed after their hearing, and you essentially eliminate that one-year window as a period of time in which they can determine if it's appropriate to have a sale in error. And the more I looked at it, the more I wondered why, without any reason, good reason, can we change the plain meaning of the statute from until the deed is issued to until the earliest date that you could have applied for the deed? And are we trying to punish the tax buyer? Are we trying to stick them with a dilapidated property that's not commercially or residentially feasible or usable? I mean, in my eyes, the tax buyer's performing a public service, trying to take properties that are off the tax rolls and put them back onto the properties as useful buildings and properties, but we all know that there's going to be times when, as in this case, it appeared that they started paying taxes on an operating hotel. And at some point, probably in 19 or 20, according to the testimony of Kathy Bellamy and the statements made by the city attorney of Galesburg, that property quit being used and became, in the words of the city attorney of Galesburg, a derelict property. Now, on the August 9th, if you look at the transcript of the hearing of, I think it's under the record of page 21, but it was the hearing of August 9th, at 2021, page 4, line 11 of the transcript, Mr. Nolden, the city attorney for Galesburg, calls this property a derelict property. Well, if it's derelict, and you see, that leads us to the second issue coming up. As they're showing up for the August 9th hearing, the Bellamys are aware and the city attorney is aware of two leads. And Bellamy agrees to pay them. And they agree that a certificate for the tax deed will be issued. And, but apparently, Mr. Nolden didn't know there were five more violations on the property, all issued after this, all issued after or before the date of this August 9th hearing, except I think there might have been one issued later on. And the court misinterpreted the, Justice Curtis Lane did that hearing. And I think Judge Rasmussen misinterpreted the docket entry as saying the city of Galesburg is waiving its liens. They didn't waive their, if you look at the transcript, they didn't waive their liens. Kathy Bellamy agreed to pay them. And the court said if you don't pay them, we'll be back. And so the city of Galesburg wanted their liens paid. And they haven't been. And according to the statute, therefore, a deed should not issue. Additionally, we just have this situation. I mean, so actually, we know that the property was derelict, according to the city attorney, as of August 9 of 21, which would have been the earliest date that this could have done. Then you get into Kathy Bellamy looking at the property on November 5 of 21. And she has previously become suspicious and afraid of what's happened. She goes and she finds it's been ransacked. It's damp. It's wet. The ceiling, the roof tiles, the roof shingles are on the ground. Block is falling off the building that's on the ground. The first floor has been kicked in. The doors are in. It's damp. It's wet. It's grown black mold all over the hallways and the rooms. At least one bathroom has been stripped out. And she felt so unsafe, she didn't proceed further into the building. Well, and go into the upper floors. Well, frankly, how much do you have to prove to show a place is unfit for habitation? Do you really expect somebody to go into a hotel, find it covered with black mold and wet and damp and the roof's leaking, and rent a room there? Of course not. That's why the city attorney was calling it a derelict property. And quite frankly, I think it's a mistake not to give someone the full year. I think we should be helping to protect them and give plain meaning to the law and not trying to reinterpret it. And secondly, I think clearly this property was derelict. It was in terrible condition. And this all happened after her first tax sale when it was an operating hotel. And it seems to me this is exactly what this statute is made for. The liens haven't been paid. According to the plain meaning of the statute, there should be no deed issued and it should be declared a sale in error. That's pretty much my argument. If anybody's got any questions, I'd be happy to answer. Thank you. Thank you, Mr. Anderson. Mr. Carlin. Thank you. Good afternoon. It's my pleasure to be here. I've had a number of appeals before this court, but never an oral argument in my 28 years. It's really a pleasure to be here. As counsel is correct, this is a manifest late. And so the trial court was in the best position to determine the evidence that was presented to it. And at an earlier hearing, whether a party not under oath or the attorney for a party not under oath stating that a property is derelict, obviously is not evidence. The trial court considered the evidence that was presented to it on the issue of whether or not the property had been substantially destroyed in the period of time from the time the first taxes were purchased and believed that he had insufficient evidence to determine that on both ends of it. You know, it's like a bookend. You have bookends of a presentation to the court. You have on one side what did it look like beforehand. And there was practically no evidence other than there were people there. There was activity. On the other hand, what you had is you heard counsel's arguments here. It's a small record. I will rely on you to review what the record actually said. But it was evidence of one door being knocked in, one bathroom having a problem, in a multi-room, multi-floored hotel. Obviously, it wasn't being used at that time. There's no explanation for why that was the case. There was some evidence of mold. But as the trial judge indicated, there was no evidence that the amount of mold that was there prevented the habitability of the hotel. With regard to the tax liens, the issue is whether or not the city took such substantial steps to waive their liens. And, in fact, they did so. In this case, again, the tax liens, from my review of the record, all were from a period of time before the order that was entered that allowed the Bellomese to have their tax deed. And that the attorney for the city came to that hearing, indicated that they were waiving their objections to the issuance of a tax deed based on tax liens. An order was entered. The Bellomese indicated that all taxes had been paid. Judge, we believe that there was, on a manifest way to the evidence, there's sufficient evidence here for you to affirm the trial court. I'll answer any questions if you have any. The conversation was just about the two liens, correct? Well, there were two hearings. And the hearing that was in December was in reference to two liens. You're absolutely right, Justice. The second hearing that was held in August wasn't limited to two liens. It was indicated that we're waiving our objections. The city was present at the second hearing? The city was present at the second hearing, yes. Because that was my question. And there were five liens. Is that correct, five liens? I believe that is the case, Justice. Because I thought that the waiver was regarding two liens. I think that the objection that was filed by the city was on the basis of two liens. That is correct. There had been no action up until in the year following for the city to enforce those liens at all. It's not a case like the Cicero case where Cicero is attempting to have their liens enforced. This is a different type of situation. So, when is it you're saying that the, let's call them the second wave of liens, when are you saying that the city assertively waived those? Sure. The timeline is this. In December of 2020, there's a hearing at which, at that point, the city had filed its objection to the issuance of a tax deed. This is the hearing for an order for tax? Exactly. And the city says, hold it, there are liens. After that, in August of 2021, at that hearing. And what kind of hearing? That was the hearing for issuance of a tax deed. I guess a continuation of the hearing, Judge. That would mean issuance, which is the second stage, a second issue. But isn't that the hearing at which they asked for a sale and error? No, no, Judge. That was the third hearing. Okay. The third hearing held, I forget when, but later. March 21st, is that right? That sounds about right, yes. So, first hearing, the city says, hey, there are liens. Second hearing held in August says, we're waiving our objections on the basis of liens. The third hearing is the hearing on the sale and error. Does that answer your question? No. Okay. Are there any other questions? All right. Well, thank you very much. Thank you. Mr. Anderson for rebuttal. Thank you. I'm going to have to leave it to the court to examine these transcripts because my reading of the transcripts is that there has never been a hearing where the five additional liens were knowingly waived. I didn't find that anywhere. This is getting a little bit confusing here in counsel. But my examination of the transcript shows that there were two liens. They were $690.51. The city objected on the basis of the two liens that their attorney knew about. My client agreed to pay them, and on that basis, the city was dropping its objection. The city, in what I've been able to find in the transcripts, never knowingly waived the five liens. And if those five liens exist, and if they haven't been knowingly waived, I would argue that the sale in error is appropriate. Were those liens recorded? Yes. So they're currently in theory a cloud on title? Yes. They are there. They are a cloud on title to this day. They've never been. . . Well, I can't speak of what's at the recorder's office, but I'm not aware of anything that ever removed those liens. And they were recorded because I did see they were document numbers, such and such, recorded on such and such a date. As a matter of fact, the liens, the five additional liens, were recorded 7-27-20, 8-28-20, 9-21-20, 12-14-20, and it looks like 6-1-21. The ones that were paid were 6-29-20 and 8-3-20. So that's the best information I can give you on that. And if there's any other questions, I'd be happy to answer them. And the only other thing I'd like to say is this. There's no evidence. Nobody argued whatever that this building was fit. All they did was pick at Kathy Bellamy's evidence and say, oh, well, there's a little black mold in the hallway. Well, look at that picture. The black mold is all over the wall in the hallway. I mean, if someone comes in and says it's damp, it's dilapidated, the doors are kicked in, the doors are broken, there's mold all over, it's unsafe, the building's falling off, the roofing's coming down, and there's nobody to say one word to contradict it other than they didn't think you went far enough in the building, took enough pictures, didn't hire an environmental safety expert to say black mold can't be lived in, didn't hire a structural engineer to show that water flowing through the building from a leaky roof is damaging the structure and making it unfit. Come on. These are things we all know and see every day. And quite frankly, in the face of no evidence to the contrary, I think it was a mistake against the manifest way to be evidence on that issue also, especially seeing the photographs we've got. Thank you. Any other questions? Thank you very much. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible.